UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
RAYMOND J. HORTON,

                  Plaintiff,                              Docket No.: 12CV4436

        - against -                                   **DEFENDANT'S AMENDED**

GREENWICH HOSPITAL, YALE-NEW HAVEN     **STATEMENT OF**
HOSPITAL and ST. JUDE MEDICAL S.C., INC.,      **UNDISPUTED FACTS**
                                                              **PURSUANT TO**
                  Defendants.                             **LOCAL RULE 56.1**

-----------------------------------------------------------------------X

        Defendant GREENWICH HOSPITAL respectfully submit this statement pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court of New York, and hereby sets forth the material facts to which there are genuine issues of facts to be tried.

## PLAINTIFF'S STATEMENT OF FACTS

        1.     On October 31, 2011, the plaintiff, a 71-year old man, was taken by ambulance to the emergency room of defendant GREENWICH HOSPITAL following an episode of syncope at home. From the emergency room, the plaintiff was moved to the coronary unit where a cardiac catheterization was performed by GREENWICH HOSPITAL's staff, including John Setaro, M.D.

        Response: Defendant admits that Mr. Horton underwent a cardiac catheterization procedure at GREENWICH HOSPITAL performed by John Setaro, M.D. However, Mr. Horton's pre-cardiac catheterization stemmed from more than an "episode of syncope at home." Mr. Horton was admitted to GREENWICH HOSPTIAL because he complained of "sudden onset of 'my heart beating out of my chest'" and lightheadedness. See Pltf. Exh. "E" at pg. 5. At GREENWICH HOSPITAL, it was determined that Mr. Horton was

1148882.1

in right bundle branch block and there was concern he was suffering a myocardial infarction. Id. at 45. Mr. Horton was intubated to protect against respiratory decompensation. Id. At GREENWICH HOSPITAL, a chest X-ray showed diffusely increased interstitial markings and prominent pulmonary vasculature consistent with interstitial edema. Id. at 61. An echocardiogram showed marked sinus bradycardia with short PR with frequent premature ventricular and fusion complexes; possible lateral infarct; prolonged QT, acute myocardial infarction; sinus tachycardia with short PR; left axis deviation; nonspecific intraventricular block; left anterior fascicular block; lateral infarct; possible acute inferior infarct; marked ST abnormality; and possible anterior subdendocardial injury. Id. at 64-65. Based on those findings, it was determined that Mr. Horton required emergency cardiac catheterization. Id. at 45.

      2.    During the procedure, and in a manner that is unknown to plaintiff and not described in the GREENWICH HOSPITAL record, Dr. Setaro, and Greenwich's physicians, inserted an Angio-Seal VIP device manufactured by St. Jude Medical, into the plaintiff's groin area of his right upper thigh. This Angio-Seal device, (an illustration which is annexed hereto as Exhibit "G") is essentially made up of a collagen sponge and anchor on one end, tethered by a suture which passes through a plastic tube ("outer sheath"), to a cap on the other end. In the standard procedure, the anchor is placed by the physician into the puncture previously made by him in the artery using the plastic tube as a delivery system; the anchor and collagen sponge are then drawn together with the suture, to seal the hole on either side of the artery. The anchor, collagen sponge and suture are all absorbable, and remain in the body. Pressure is maintained using the plastic tube, which is not absorbable, and which is later withdrawn. This plastic tube or "sheath" is what Greenwich Hospital states, shattered inside Raymond Horton's body.

1148882.1

Response: Defendant disputes plaintiff's statement that it is unknown how the Angio-Seal VIP device was inserted. At the outset, Dr. Setaro was disclosed to plaintiff as part of Greenwich Hospital's initial Rule 26(a) disclosure. See Def. Exh. C. Therefore, plaintiff is able to depose Dr. Setaro to learn how he inserted the Angio-Seal VIP device, plaintiff cannot refuse to engage in discovery and then claim the method in which a procedure was performed is unknown. Defendant also disputes plaintiff's statement as to what the "standard procedure" for inserting an Angio-Seal VIP device is or how the Angio-Seal is implanted as plaintiff offers no evidence for those "facts." Last, there is no evidence that Angio-Seal device "shattered", the record indicates that it "disintegrated." See Pltf. Exh. "E" at pg. 69.

3. The Angio-Seal device was used to close an incision made by defendant GREENWICH HOSPITAL in plaintiff's femoral artery in his right groin, to obtain blood for testing. During this procedure, the plastic sheath portion of the Angio-Seal device virtually exploded and fractured into multiple pieces. No further medical care was given there to the plaintiff and he was immediately transferred by ambulance to defendant YALE NEW HAVEN HOSPITAL for further surgery by Dr. Ochoa Chaar, Assistant Professor of Vascular Surgery, in an attempt to remove the Angio-Seal fragments.

Response: Defendant disputes this statement as follows. The Angio-Seal device was used as part of a cardiac catheterization, not to seal an incision after blood testing. See Pltf. Exh. "E" at pg. 69. There is no evidence that the Angio-Seal device "virtually exploded and fractured into multiple pieces." Rather, the record states that the "outer sheath disintegrated into multiple pieces." Id. Third, medical care was administered to Mr. Horton after the complication was identified. The chart demonstrates that after the sheath disintegrated, an attempt was made

1148882.1

to remove the pieces, then Mr. Horton was administered heparin, before he was transferred to Yale New Haven Hospital for extraction of the remaining pieces. Id.

4. Following plaintiff's admission to YALE NEW HAVEN HOSPITAL, Dr Chaar performed two separate surgeries to remove the multiple fragments from the area of plaintiff's right groin, and upper right leg and adjacent areas. Following the last surgery, it was determined that while there were multiple other fragments of the Angio-Seal device still remaining in the plaintiff's body, (i.e., 3 cm. and 15 mm. sheath fragments and other fragments remaining in the plaintiff's groin area), it was determined by Dr. Chaar, to be too dangerous to remove them, and they remain in plaintiff's groin and upper right leg to date.

Response: Defendant only disputes the last sentence of paragraph 4. Plaintiff has not responded to GREENWICH HOSPITAL's interrogatories or appeared for the deposition he was noticed for. Therefore, GREENWICH HOSPITAL only has limited knowledge of Mr. Horton's post Yale New Haven Hospital medical course and does not know if he has had any or all of the sheath fragments removed.

5. On January 13, 2013, plaintiff RAYMOND HORTON was re-admitted to the emergency room of defendant GREENWICH HOSPITAL due to a "pre-syncopal" episode while at home. The cause of plaintiff's illness was not definitively identified, however the physicians at GREENWICH HOSPITAL diagnosed, that it could have been caused by an "infection of the fragments of the Angio-Seal which remained in his femoral artery and surrounding muscle tissue", to date.

Response: Defendant disputes this statement to the extent that Mr. Horton provided differing accounts as to why he required medical attention at Greenwich Hospital. While plaintiff did not attach the records from the January 13, 2013 admission as an exhibit,

relevant portions of the chart are annexed hereto. It is documented that Mr. Horton reported falling at home and being too weak in his arms and legs to get himself back up, while also reporting that he fainted. See GH records at pgs. 3 and 4. Mr. Horton also complained of chronic leg and arm weakness. Id. Defendant also disputes this paragraph in that it is speculation that the sheath fragments could have caused an infection. Indeed, the record indicates that when Mr. Horton was evaluated by infectious disease specialist Harry Conte, M.D., Dr. Conte's impression was that Mr. Horton had "endocarditis or infection of his AICD (automatic implantable cardioverter/defibrillator)." Id. at 56 and 57.

6. Plaintiff has also suffered disabling and painful severe nerve injury at the location of the Angio-Seal fracture and the resulting multiple surgeries, causing him permanent nerve damage with severe pain and numbness and resultant disability in his right thigh and leg.

Response: Defendant disputes this statement as it has no basis to confirm this statement as plaintiff refuses to provide a response to interrogatories or appear for a deposition. Therefore, Defendant only has a limited understanding of Mr. Horton's' pre and post cardiac catheterization course.

7. As stated in the information published by the manufacturer of the device, ST. JUDE MEDICAL S.C., INC., (both accompanying the device and online), the device has a "0%" rate of malfunction.

Response: Defendant cannot admit or dispute this statement. Defendant objects to the statement being included as an "undisputed fact" as it is hearsay and not admissible at trial.

1148882.1

  8. After this occurrence, defendant GREENWICH and/or YALE-NEW HAVEN admittedly discarded the remaining portions of the fractured Angio-Seal Device placed in plaintiff.

  Response: Defendant disputes this statement, as GREENWICH HOSPITAL provided the remaining portions of the device to St. Jude Medical S.C., Inc. See Def. Exh. "H." Plaintiff has made no effort to obtain the remaining portions of the device.

  9. Defendant GREENWICH further denies having in its possession any documents related to the subject failed device; any documents related to the storage and/or maintenance of the subject device prior to its use in the plaintiff, any documents related to any investigation into how this incident occurred or how the subject device failed, or any MDR reporting protocols for which required GREENWICH HOSPITAL to report the occurrence to the ST. JUDE MEDICAL within 10 working days of the incident

  Response: Defendant disputes this statement, as GREENWICH HOSPITAL disclosed a copy of the incident report and St. Jude Medical's response. See Def. Exh. "H."

  10. Plaintiff's Amended Complaint against GREENWICH HOSPITAL, dated March 27, 2013, alleges in paragraph "25", under his "Third" claim, that the Angio-Seal VIP was "defective due to the negligent storing of the device by defendant GREENWICH HOSPITAL". Plaintiff further alleges under his "Fourth" claim, in paragraph "35", that "said product was defective in its manufacture, assembly, storage and/or shipping when it was received by this defendant [GREENWICH HOSPITAL]", and that "said product reached plaintiff in its defective condition". Defendant GREENWICH HOSPITAL, denies each of those allegation in paragraphs "16" and "19" of its Amended Answer dated April 29, 2013, to the Amended Complaint.

1148882.1

Response: Defendant disputes this statement. Defendant's responses to paragraphs "16" and "19" each read: "Denies the allegations contained in the numbered paragraph of the complaint designated…insofar as the allegations pertain to the answering defendant and otherwise denies knowledge or information sufficient to form a belief as to these paragraphs and begs leave to refer all questions of law to the court and all questions of fact to the trier thereof." See Pltf. Exh. "D."

11. Having thus admitted in its Amended Answer, that this device "was not defective" when it reached the plaintiff, defendant GREENWICH HOSPITAL, has eliminated the manufacturer ST. JUDE MEDICAL S.C., INC., from this lawsuit. It has been further admitted in these pleadings that the device was in the sole possession and use of defendant GREENWICH HOSPITAL and is (sic) employees or agents, from the time it was received from ST. JUDE MEDICAL, until it exploded in plaintiff's body. This is the very foundation of the legal doctrine of "res ipsa loquitor" upon which the instant motion is made.

Response: Defendant disputes the statements in this paragraph as they are legal conclusions and not undisputed facts. Moreover, it is undisputed that the Angio-Seal device was not created or manufactured by GREENWICH HOSPITAL and therefore was not in GREENWICH HOSPITAL's sole possession prior to the insertion in plaintiff. See Pltf. Exh. "K".

12. In both its original Answer to plaintiff's original Complaint, and its Amended Answer, GREENWICH HOSPITAL did not assert any cross-claim against co-defendant ST. JUDE MEDICAL S.C., INC., the manufacture(sic) of the device, so as to allege that the subject Angio-Seal device was "defectively manufactured" or that ST. JUDE MEDICAL "failed to warn of any danger or risk in it use"; or that "ST. JUDE" was negligent in its quality

1148882.1

control procedure, which allowed a defective Angio-Seal device to reach the plaintiff. In fact, GREENWICH HOSPITAL consented to "discontinue" the instant action against ST. JUDE, who is no longer a defendant in this action.

        Response:    Defendant does not dispute the statements in this paragaraph.

## PERTINENT PROCEDURAL BACKGROUND

1. In a complaint and amended complaint, plaintiff alleged that as a result of the actions of defendants Greenwich Hospital, Yale-New Haven Hospital, and St. Jude Medical S.C., INC., he suffered pain and suffering, permanent injury and disability due to defendants medical malpractice, negligence and wrongful acts and omissions in their medical treatment, use and manufacture of a vascular closure product and device known as the "Angio-Seal VIP", as well as their requested and total failure to test, diagnose, locate, treat and remove portions of said product and device from plaintiff and their failure to obtain plaintiff's informed consent to the use of such product and device and such medical procedures. Plaintiff further alleges that he suffered injury due to the use and manufacture, storage and/or shipping of a vascular closure device known as the Angio-Seal VIP, as well as their repeated and total failure to test, diagnose, locate treat and remove portions of said device. See Pltf. Exhs. "A" and "C."

2. Defendants served and filed answers to the complaint and amended complaint on behalf of Greenwich Hospital and Yale-New Haven Hospital on June 27, 2012 and April 29, 2013. See Pltf. Exhs. "B" and "D."

3. On September 19, 2012, counsel for Greenwich Hospital and Yale and for plaintiff attended a mediation session. See Def. Exh. "B."

4. On January 27, 2013, Defendant's filed an initial Rule 26(a) disclosure. See Def. Exh. "C."

1148882.1

5. On February 4, 2013, a joint discovery order was entered into by all parties. Pursuant to the order, fact discovery was to be completed by July 1, 2013. See Def. Exh. "D."

6. On May 17, 2013, Defendants served plaintiff's counsel with an Amended First Set of Interrogatories. See Def. Exh. "E." Plaintiff did not respond.

7. On June 18, 2013, Mr. Horton was notified by Defendants for his deposition. See Def. Exh. "F." He did not appear.

8. On August 18, 2013, Defendants disclosed Greenwich Hospital's FDA MedWatch Report, as well as St. Jude Medical S.C., Inc.'s Investigation Letter and FDA Adverse Event Report. See Def. Exh. "K." Only the MedWatch Report was generated by Greenwich Hospital, the Investigation Letter was drafted by Mike McCauley, Product Surveillance Analyst at St. Jude Medical, S.C., Inc. Id. The investigation letter is not notarized or sworn.

## PERTINENT FACTUAL HISTORY

9. Mr. Horton, then seventy-one years-old, arrived at the emergency room at Greenwich Hospital on October 23, 2011, via Port Chester-Rye-Rye Brook EMS. See Pltf. Exh. "E" at pgs. 1-5. Emergency Medical Technician Michael Paniccia noted that Mr. Horton complained of a sudden onset of feeling like his heart was "beating out of his chest" and lightheadedness. Id. at 5. The Technician further noted that Mr. Horton was probably in ventricular tachycardia and 150 mg. of Amiodarone was administered via IV. Id. Subsequently, Mr. Horton reverted to normal sinus rhythm and reported feeling better.

10. In the Greenwich Hospital Emergency Department, Mr. Horton noted to be diaphoretic and tachycardic. See Pltf. Exh. "E" at pgs. 11 and 12. He described his chest pain as sudden onset with pressure and tightness, as well as sweating and shortness of breath. Id.

1148882.1

11. Mr. Horton's medical history as significant for coronary artery disease with stents placed in 1996, congestive heart failure, peripheral vascular disease, bypass surgery in 2000, chronic Hepatitis C, and chronic obstructive pulmonary disease. See Def. Exh. "A" at pg. 1.

12. On October 24, 2011, a cardiac catheterization was performed by John Setaro M.D. See Pltf. Exh. "E" at pgs. 76-81. During the procedure, a patent left anterior descending stent with non-critical re-stenosis was identified. Id. Upon completion of the catheterization, Dr. Setaro used an Angio-Seal device to close the puncture site, however, the Angio-Seal outer sheath then disintegrated into multiple pieces. Id.

13. Mr. Horton was transferred to Yale on October 24, 2011 and would remain there until March 5, 2012. See Def. Exh. "A" at pgs. 2-4. At Yale, Mr. Horton underwent a further surgical procedure to remove the fragmented pieces of the product from his body. The surgeon made a medical decision not to remove the fragmented pieces. Id.

Dated: New York, New York
       December 12, 2013

                        Respectfully submitted,
                        HEIDELL, PITTONI, MURPHY & BACH, LLP

                        By: _____
                             Adam M. Dlugacz (AD 2918)
                             Attorneys for Defendants
                             Greenwich Hospital and
                             Yale-New Haven Hospital
                             Office & P.O. Address
                             99 Park Avenue
                             New York, New York 10016
                             T (212) 286-8585
                             F (212) 490-8966

cc:    Scott Seskin, Esq.
       Frank & Seskin, LLP

1148882.1

110 East 59th Street
New York, New York 10022

1148882.1


**GREENWICH HOSPITAL**
Yale New Haven Health

5 PERRYRIDGE ROAD
GREENWICH, CT 06830-4608
Inpatient Record

HORTON,RAYMOND
MRN: MR3769036
DOB: 3/22/1940, Sex: M
Adm:1/31/2013, D/C:2/6/2013

## ED Notes

**ED Notes signed by Stanton, Veronica, RN at 1/31/2013 11:20 PM**

| Author: | Stanton, Veronica, RN | Service: | (none) | Author Type: | Registered Nurse |
|---|---|---|---|---|---|
| Filed: | 1/31/2013 11:20 PM | Note Time: | 1/31/2013 11:20 PM | | |

Side rails up, call bell within reach, stretcher in lowest position and ID band in place.

Electronically signed by Stanton, Veronica, RN on 1/31/2013 11:20 PM

**ED Notes signed by Stanton, Veronica, RN at 1/31/2013 11:21 PM**

| Author: | Stanton, Veronica, RN | Service: | (none) | Author Type: | Registered Nurse |
|---|---|---|---|---|---|
| Filed: | 1/31/2013 11:21 PM | Note Time: | 1/31/2013 11:20 PM | | |

Pt remains alert and conversant c/o weakness and falling around 2100 where he hit his forehead. Pt reports + LOC. Pt denies pain at this time. Abraison noted to forehead, no lac or active bleeding noted. Pt in CT scan at this time.

Electronically signed by Stanton, Veronica, RN on 1/31/2013 11:21 PM

**ED Notes signed by Stanton, Veronica, RN at 2/1/2013 12:40 AM**

| Author: | Stanton, Veronica, RN | Service: | (none) | Author Type: | Registered Nurse |
|---|---|---|---|---|---|
| Filed: | 2/1/2013 12:40 AM | Note Time: | 2/1/2013 12:40 AM | | |

Both sets of blood cultures drawn and sent to lab. Pt aware about hospital admission. Being evaluated by Dr. Cleare.

Electronically signed by Stanton, Veronica, RN on 2/1/2013 12:40 AM

**ED Notes signed by Stanton, Veronica, RN at 2/1/2013 1:14 AM**

| Author: | Stanton, Veronica, RN | Service: | (none) | Author Type: | Registered Nurse |
|---|---|---|---|---|---|
| Filed: | 2/1/2013 1:14 AM | Note Time: | 2/1/2013 1:13 AM | | |

Pt was carry cash in pants pocket, total amount was calculated with pt and given to security to hold.

Electronically signed by Stanton, Veronica, RN on 2/1/2013 1:14 AM

**ED Provider Notes signed by Weinschenk, Barbara, PA at 2/1/2013 1:22 AM**

| Author: | Weinschenk, Barbara, PA | Service: | (none) | Author Type: | Physician Assistant |
|---|---|---|---|---|---|
| Filed: | 2/1/2013 1:22 AM | Note Time: | 2/1/2013 12:16 AM | | |

## History
**Chief Complaint**
Patient presents with
- Fall

  *Pt states he fell hitting forehead around 2100 and reports + LOC. States he was too weak to get up and layed on floor for two hours. Pt denies chest pain. Abrasion noted to forehead.*

**HPI Comments:** 72 year old man with history of CAD (taking coumadin), COPD, and recent diagnosis of pneumonia presents via EMS with hx of fall this evening. Pt says he has been very weak despite finishing antibiotic (?name). Tonight his legs gave out and he fell. It is unclear if he passed out. At one point he tells me



| | | |
|---|---|---|
| GREENWICH HOSPITAL<br>Yale New Haven Health | 5 PERRYRIDGE ROAD<br>GREENWICH, CT 06830-4608<br>Inpatient Record | HORTON,RAYMOND<br>MRN: MR3769036<br>DOB: 3/22/1940, Sex: M<br>Adm:1/31/2013, D/C:2/6/2013 |

## ED Records (• continued• )

### ED Notes (• continued• )

he remembers falling and being too weak in both arms and legs to get himself back up. At another point he tells me he fainted. He continued over an hour to 1 1/2 hours to get up waiting for his friends to come home. Pt had chronic leg and arm weakness with new fatigue.
He hit his head on the floor but denies headache. He denies chest pain, neck or back pain.

He was diagnosed with pneumonia at VA hospital and was encouraged to be admitted but pt refused.

Patient is a 72 y.o. male presenting with fall. The history is provided by the patient and the EMS personnel. No language interpreter was used.

### Fall
The accident occurred 3 to 5 hours ago. The fall occurred while walking. He landed on a hard floor. There was no blood loss. The pain is present in the head. The pain is at a severity of 3/10. The pain is mild. He was not ambulatory at the scene. There was no entrapment after the fall. There was no drug use involved in the accident. There was no alcohol use involved in the accident. Pertinent negatives include no fever, no numbness, no abdominal pain, no hematuria and no headaches.


Past Medical History
    Gangrene
    Osteomyelitis
    COPD (chronic obstructive pulmonary disease)



Past Surgical History
    PACEMAKER INSERTION


History reviewed. No pertinent family history.

History
Substance Use Topics
  • Smoking status:              Not on file
  • Smokeless tobacco:           Not on file
  • Alcohol Use:                 Not on file


Review of Systems
Constitutional: Positive for fatigue. Negative for fever.
HENT: Negative for facial swelling, neck pain and neck stiffness.
Respiratory: Positive for cough and shortness of breath. Negative for chest tightness and wheezing.
Cardiovascular: Negative for chest pain, palpitations and leg swelling.
Gastrointestinal: Negative for abdominal pain.
Genitourinary: Negative for hematuria and flank pain.
Musculoskeletal: Positive for gait problem. Negative for back pain.
Skin: Negative.
Neurological: Positive for dizziness and weakness. Negative for tremors, syncope, light-headedness, numbness and headaches.



| | | |
|---|---|---|
| **GREENWICH HOSPITAL**<br>Yale New Haven Health | 5 PERRYRIDGE ROAD<br>GREENWICH, CT 06830-4608<br>Inpatient Record | HORTON,RAYMOND<br>MRN: MR3769036<br>DOB: 3/22/1940, Sex: M<br>Adm:1/31/2013, D/C:2/6/2013 |

## Hospital Encounter Notes (• continued• )

### Consultation - Encounter Notes (• continued• )

The patient has no other sxs of CP, Dz, palps. He does get sob and has a cxough with phlegm. There are no events on the device and it is working well therefore, I would recommend that the pt have a further eval of O2, perhaps he will require Home O2 and the hypoxia caysed the syncope. I discussed this with DR Santos in detail. Otherwise would continue the current cardiac regimen.

Signed:
Alexander DelVecchio, M.D.
For questions please page:1382

Electronically signed by Delvecchio, Alexander, MD on 2/2/2013 3:42 PM

### Consult Note - Encounter Notes

Consult Note signed by Conte, Harry, MD at 2/2/2013 12:59 PM

| Author: | Conte, Harry, MD | Service: | Infectious Disease | Author Type: | Physician |
|---|---|---|---|---|---|
| Filed: | 2/2/2013 12:59 PM | Note Time: | 2/2/2013 12:32 PM | | |
| Related Notes: | Original Note by Conte, Harry, MD filed at 2/2/2013 12:53 PM | | | | |

Infectious Diseases Consultation

REASON FOR CONSULTATION: Positive blood cultures.

HPI: The patient is a 72 year old man who has been treated for the past 4 days for pneumonia with an unknown antibiotic taken twice daily. He fell 01/31 and was not able to get up because of upper and lower extremity weakness. He was brought to this hospital 01/31 and was found to be afebrile but having WBC count of 13.2 and chest X-ray showing a possible right lower lobe infiltrate. He was given Unasyn for presumed pneumonia. Today, all bottles from 2 sets of blood cultures drawn simultaneously in the ER 02/01 grow gram positive cocci in pairs and chains.

PMH: the patient has history of coronary artery disease and had stent placed 1996. He had atrial fibrillation and ventricular tachycardia and was brought to this hospital 2011 and had catheterization that resulted in inabilty to remove catheter wire so that open femoral endarterectomy was performed at Yale with placement of AICD. He has peripheral vascular disease s/p aortobifemoral bypass 2000. He had osteomyelitis and gangrene of his right hand 50 years ago and was at Walter Reed Army Medical Hospital for 2 years receiving treatment. He has had cervical disk surgery. He has chronic hepatitis C virus infection and COPD. He lives in Port Chester and has most of his health care done at Bronx VA Hospital.

ALL: The patient has no medication allergy.

MEDICATIONS: Unasyn 3 grams IV Q 8 hours, amiodarone, ASA, Symbicort, digoxin, DUO-NEB, lisinopril, pravastatin, ranitidine, Spiriva, warfarin.

SH: He is retired and visits VA hospital in NYC. He has quit tobacco and does not use alcohol.



| | | |
|---|---|---|
| GREENWICH HOSPITAL<br>Yale New Haven Health | 5 PERRYRIDGE ROAD<br>GREENWICH, CT 06830-4608<br>Inpatient Record | HORTON, RAYMOND<br>MRN: MR3769036<br>DOB: 3/22/1940, Sex: M<br>Adm:1/31/2013, D/C:2/6/2013 |

## Hospital Encounter Notes (• continued• )

### Consult Note - Encounter Notes (• continued• )

FH: Family history is noncontributory.

ROS: He notes malaise and muscle weakness and denies cough, shortness of breath, chest pain, abdominal pain, pain in upper or lower extremities, diarrhea, vomiting, pain or difficulty with urination, focal weakness or numbness.

PE: TMAX = 99.1, BP = 107/61, HR = 88, RR = 20.
The patient is in no distress.
HEENT: Dentition is intact and there are no oropharyngeal lesions.
RESP: Pacer pocket is in right upper chest and is nontender and nonerythematous. Lungs have scattered wheezes on expiration.
CARD: Heart has normal rate and no murmur is heard.
ABD: The abdomen is soft and nontender with normal bowel sounds.
EXT: The lower extremities have no edema or erythema. The right hand has reduced movement at MCP joints and has no erythema or edema.

LABORATORY EXAMINATION: WBC Count = 10.8. Creatinine = 1.2. Urinalysis has no WBC and is N02 negative. CK = 96. Liver function tests are normal. Chest X-ray 02/01 shows no infiltrate. CT of cervical spine without contrast 02/01 shows anterior fusion C5-6 with no loosening. CT of head without contrast 01/31 shows no acute pathology. Sputum culture 02/01 yields no growth.

IMPRESSION: The patient is a 72 year old man who presents with weakness and is found to have positive blood cultures on admission. I am concerned that he may have endocarditis or infection of his AICD. There is no evidence for pneumonia and urinalysis is normal. He has no medication allergy and has been taking unknown antibiotic prior to admission.

RECOMMENDATIONS: The patient will be given vancomycin 1,500 mg IV Q 12 hours. He should have another blood culture obtained today and have transesophageal echocardiography to evaluate heart valves as well as pacer wire. Blood culture will be followed and antibiotic therapy will be modified based on the results.

Harry A. Conte, M.D.


Electronically signed by Conte, Harry, MD on 2/2/2013 12:59 PM


2/2/2013 12:53 PM Consult Note signed by Conte, Harry, MD